

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**
**MILWAUKEE**

**FEDERAL MANUFACTURING, LLC**         :  **Case No. _____**
**N15 W23500 Stone Ridge Drive**
**Waukesha, Wisconsin 53188**            :  **Judge _____**

                  **Plaintiff,**          :

**vs.**                                  :   **VERIFIED COMPLAINT FOR**
                                             **PRELIMINARY AND PERMANENT**
                                         :   **INJUNCTIVE RELIEF AND DAMAGES**

**MATTHEW R. WANAT**                     :
**2473 N. 73rd St.**
**Wauwatosa, Wisconsin 53213**            :   **(With Jury Demand Endorsed Hereon)**

                  **Defendant.**          :

                                         :

Plaintiff Federal Manufacturing, LLC ("Federal") for its Complaint against Defendant Matthew R. Wanat ("Wanat") alleges as follows:

## I.    PARTIES, JURISDICTION, AND VENUE

1.    Plaintiff Federal is a Wisconsin Limited Liability Company with its headquarters and principal place of business located at N15 W23500 Stone Ridge Drive, Waukesha, Wisconsin 53213.  It is in the business of designing and manufacturing filling, rinsing, capping, and cleaning systems for a wide range of free-flowing liquids.

2.    Defendant Wanat is a former Federal employee, residing at 2473 N. 73rd St., Wauwatosa, Wisconsin, 53213.

3.    Subject matter jurisdiction is proper in this Court based upon 18 U.S.C. §1836, *et seq.*, 28 U.S.C. § 1331, and 28 U.S.C. § 1367.

4.    Personal jurisdiction and venue are proper over Wanat because he consented and agreed to jurisdiction in the federal courts in the state of Wisconsin for any actions or claims brought under his Confidentiality & Secrecy Agreement, Agreement Not To Solicit,

- 1 -

and Agreement Not To Compete ("Agreement") with Federal. A true and accurate copy of his Agreement is attached as Exhibit A.

5.     Personal jurisdiction and venue is also proper over Wanat because he is a resident of Wisconsin, because he has performed services for Federal in Wisconsin, because he caused a tortious injury to Federal in Wisconsin through his actions of misappropriating and/or inevitably utilizing confidential and trade secret information, and because his breaches of the Agreement occurred in Wisconsin.

6.     Venue is proper in this Court because a substantial part of the events or omissions giving rise to the claim occurred in Wisconsin.

## II.     BACKGROUND

7.     This is an action in which Federal seeks preliminary and permanent relief, as well as damages, as a result of Wanat's breach of contract, and misappropriation and/or inevitable disclosure of Federal's trade secret information.

8.     Federal is a national leader in the development, manufacture and sale of rinsing, filling, capping, and cleaning systems for a wide range of food and non-food applications, such as paint, agricultural chemicals, household chemicals, personal care products, and kidney dialysis fluids. It serves customers throughout the United States. Confidential and proprietary business information is at the heart of Federal's business.

9.     Federal spends substantial resources, both human and financial, developing the technology, marketing, customer sales, forecasting, and pricing information for its products and services, which is proprietary, confidential and/or trade secret information belonging to Federal. Every stage of Federal's operations – from product development to manufacturing technology and methods, applications methods, marketing strategy, pricing

and customer relationships – is replete with trade secret information. This information provides it with a competitive advantage in the marketplace.

10.    Federal has historically exercised great care in protecting its trade secrets and guarding against disclosure of confidential business information.  For example, access to its technological facility is restricted to employees and authorized, escorted visitors. Within its facilities, Federal has implemented and follows strict controls to protect the secrecy of product development information, manufacturing methods, applications, methods, customer lists, pricing, customer project and bid information, supplier information and other technical, financial and business information.  Federal maintains a confidential, secure computer network by requiring all employees to authenticate their usage with a username and confidential password.  Federal utilizes confidentiality agreements and non-competition agreements with employees who are provided access to its trade secret information.

11.    Wanat worked for Federal from 2014 to 2021 as Regional Sales Manager, responsible for the southeast region of the United States.  He was well compensated for his services, with  six-figure earnings.

12.    In these roles, Wanat had direct contact with Federal's customers, and had access to a wide variety of confidential, proprietary and/or trade secret information, including information on product development and launches, client contacts, client projects, bids, pricing, margins, contract terms, marketing and business development strategies, growth opportunities, competitive strengths and weaknesses, manufacturing costs, and a wide variety of other information.

13.     One of the technologies that sets Federal apart in the industry is its net weight filling technology.  Federal invested more than three million dollars in developing this technology, which weighs the liquid as it is entering the container, and creates some of the most accurate filling in the industry.  This is critical for customers because the lost margin caused by overfilling is very expensive, especially with high value fluids.  This method gives Federal a competitive advantage in the marketplace, and Wanat has intimate knowledge of the technology, its advantages, how it differs from standard technology, and how it was developed.

14.     During Wanat's tenure, Federal also invested significant time and financial resources to develop an integrated paint lidding-filling technology that is first-to-market. This proprietary method integrates the filling and lid application, rather than having the container filled and then moved down the line for lid application at a separate machine. This product allows customers to increase the speed of filling by nearly 50%, and maintains 100% positive control of the container to eliminate spillage.  Wanat provided input in the development of this technology, and as a trusted, high-level employee was provided a wealth of trade secret information associated with it.  This included information such as design, market strategy, and margin information.

15.     Because of the nature of his role, Wanat executed the Agreement with Federal when he was hired in November of 2014.  (Exhibit A).

16.     The Agreement that Wanat signed with Federal provides, in relevant part:

Non-Compete.  . . . Employee agrees that, during the Non-Compete Period, as defined below, Employee shall not directly or indirectly own any interest in, manage, control, participate in, consult with, render services for or be employed in any capacity with any organization or business venture that competes or may compete with the Company during the last two (2) years of his/her employment with the Company for any Competing Business as

defined herein, including but not limited to having direct customer contact, writing of technical manuals, updating customer databases and machine location databases, or developing training information for use of equipment. . . . For purposes of this Agreement (i) a Competing Business shall mean any business venture located within 50 miles of where the Company is actually serving customers that competes or intends to compete with the Company in connection with the Business or any other product developed and/or manufactured by the Company during the last two (2) years of Employee's employment with the Company. . . .

(Agreement, Exhibit A, p. 3).

17. Wanat specifically and expressly acknowledged that given his position and the information that would be shared with him, his "services are of special, unique and extraordinary value to the Company and impact the good-will of the Company." (Agreement, Exhibit A, p. 3).

18. The Agreement provides that in the event of a breach of his obligations, "the Company shall have, in addition to any and all remedies at law, the right to an injunction, specific performance or other equitable relief to prevent the violation of Employee's obligations hereunder." Further, he agreed to pay the Company's legal fees "in connection with successfully enforcing any of its rights under this Agreement. . . ." (Agreement, Exhibit A, p. 4).

19. The Agreement also contains a provision prohibiting the solicitation of Federal's customers:

Non-Solicitation. . . .In addition, during the Non-Compete period Employee shall not directly or indirectly through another entity . . . (iii) induce or attempt to induce any customer, supplier, licensee, licensor, franchisee or other business relation of the Company or any Affiliate to do business with Employee (or any person or entity for whom Employee is rendering services or acting on its behalf) or to cease doing business with the Company or such Affiliate, or in any way interfere with the relationship between any such customer, supplier, licensee or business relation and the Company or any

Affiliate (including, without limitation, making any negative statements or communications about the Company or its Affiliates).

(Agreement, Exhibit A, p. 3).

20.     The Agreement also protects against the disclosure of Federal's confidential

and trade secret information:

> Confidential Information. Employee acknowledges that in the course of his/her employment with the Company, he/she has and will have access to confidential information relating to the business affairs of the Company or any of its Subsidiaries and any other "Affiliate". . . . Such confidential information includes, but is not necessarily limited to customer, contractor, distributor, manufacturer's representative, and vendor identities, contact persons and their addresses and telephone numbers, correspondence, communications and other information; rolodexes and business card files, procedures, manufacturing processes, engineering methods, designs, drawings and specifications, methods, records and standards relating to the manufacture, distribution and sales and marketing of the Company's or any of its Subsidiaries' or Affiliates' products; the terms of any contracts entered into by the Company or any of its Subsidiaries or Affiliates; any information on any computer database; sales, marketing and prospect plans and identities; advertising and promotional brochures and cover designs; fiduciary information; records, data, formulas, specifications, trade secrets, developments, research activity, processes, designs, sketches and drawings; short term and long range plans, financial status, statements and information; and personal data . . . which is disclosed to Employee either purposely or inadvertently in the course of Employee's employment with the Company.

(Agreement, Exhibit A, pp. 1-2).

21.     Wanat expressly agreed that with regard to the confidential, proprietary

and/or trade secret information:

> Employee agrees that such information shall be considered secret and disclosed to Employee in confidence.  Employee recognizes that such information is the sole property of the Company and shall be used for exclusive benefit of the Company.  During Employee's employment by the Company and thereafter, employee will not directly or indirectly disclose or use any such confidential information except as required in the conduct of the Company's business.

(Agreement, Exhibit A, p. 2).

22.    On April 30, 2021, Wanat provided notice that he was resigning from Federal effective May 6, 2021.  Wanat refused to answer questions about where he was going to work, and refused to come to the Company's facility for his exit interview. Instead, he met with the Vice President and General Manager, Will Casey ("Casey") and Human Resources Manager Art Fuentes ("Fuentes") at a hotel off-site. Wanat refused to answer a single question about why he was resigning, or what his plans were.  He also refused to answer these questions when asked by his supervisor. However, Wanat affirmatively stated that he was not going to work for a competitor. During the exit interview, Casey and Fuentes reminded Wanat of his post-employment obligations.  He was also given a written acknowledgment of his resignation which outlined his contractual obligations.  (Exhibit B).

23.    Despite Wanat's repeated and blatant representations that he was not going to work for a competitor,  Federal has recently learned that Wanat has done exactly that. According to Wanat's social media, he accepted a position with Serac, Inc., a direct and fierce competitor of Federal's, located within the prohibited 50-mile radius of numerous Federal customers.  Further, he has taken the exact same role – Regional Sales Manager – in the exact same geographic territory.  He has taken this position in direct violation of his noncompetition obligations set forth in his Agreement with Federal, and attempted to hide his tracks from Federal.

24.    It is impossible for Wanat to perform the same job, servicing the same customer base, in the same geographic territory for a direct competitor without necessarily using and disclosing the treasure trove of trade secret information entrusted to him by

Federal. Further, his work with Serac puts Federal's trade secret technologies in peril. Serac is one of Federal's few competitors in the net weight filling market. Wanat possesses a wealth of trade secret information relating to Federal's net weight filling technology, and its new integrated filling and lidding technology. This information includes design information, competitive attributes, sales and marketing strategy, sales margin information and other knowledge that would allow Serac to gain an unfair competitive advantage in the market.

25. Upon learning of Wanat's employment with Serac, counsel for Federal sent him a cease and desist letter, with a copy to the President of Serac. (Exhibit C) He was directed to contact counsel. Wanat failed to do so.

26. Federal has now learned that Wanat has not taken any steps to mitigate his violations after receiving that correspondence. Instead, he has thumbed his nose at the directive and his obligations by violating the non-solicitation provision of his Agreement as well. Federal recently obtained information from an existing customer that it has received a sales call from Wanat, seeking to divert its business to Serac. Absent relief from this Court, Wanat seems poised to use all available means to cause irreparable harm to Federal.

## COUNT I

### (Breach of Contract – Injunctive Relief)

27. Federal incorporates paragraphs 1 through 26 above by reference as if fully rewritten.

28. The non-compete, non-solicitation and non-disclosure provisions contained in the Agreement described above are reasonable and necessary to protect Federal's legitimate business interests including, but not limited to, its current and prospective

customer relationships, its employment relationships, its technology, its good will and its confidential, proprietary and/or trade secret information.

29.     Wanat breached the non-compete,  non-solicitation and non-disclosure provisions contained in the Agreement by competing directly with Federal, by soliciting Federal's existing customers, and, upon information and belief, by stealing, retaining, utilizing, and/or disclosing trade secret information, including, but not limited to, customer information, belonging to Federal.

30.     The provisions contained in the Agreement do not impose an undue burden on Wanat.

31.      The Agreement is not injurious to public welfare.  In fact, the issuance of an injunction would promote the public interest by preserving the status quo and allowing Wanat to protect its trade secret technology and methods, continue its valuable customer and employment relationships, safeguarding confidential trade-secret information, and preventing unethical conduct.   Further, Wanat specifically agreed in writing that irreparable harm would result from violations of the Agreements. Thus, injunctive relief is required to remedy violations of the provisions.  (Agreement, Exhibit A, p. 4).

32.     The restrictions contained in the Agreement are reasonable.  The provisions are narrowly tailored to preserve the status quo and protect Federal's legitimate business interests and its own valuable trade secrets.

33.     Unless Wanat is enjoined from further violating the provisions of the Agreement, Federal will be irreparably harmed by:

(a)  The loss of its goodwill;

(b)  Damage to its organizational stability;

(c)  Use and disclosure by Wanat of Federal's valuable confidential and trade secret information which is solely the property of Federal;

(d)  The loss of confidence and trust of customers, loss of good will, and loss of business reputation; and

(e)  Present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable.

34.    Federal has no adequate remedy at law.

## COUNT II

### (Breach of Contract - Damages)

35.    Federal incorporates paragraphs 1 through 34 above by reference as if fully rewritten herein.

36.    Wanat has violated and is continuing to violate the non-compete and non-disclosure provisions of the Agreement as described above.

37.    As a direct and proximate result of Wanat's unlawful conduct, he is liable to Federal in an amount in excess of $75,000.00, the precise amount to be determined at trial.

## COUNT III

### (Misappropriation of Trade Secrets in violation of  Wis. Stat. §134.90, *et seq*.)

38.    Federal incorporates by reference its allegations contained in paragraphs 1 through 37 above as if fully rewritten herein.

39.    In connection with the development of its business, Federal has expended substantial time, labor and money to research proprietary business methods, strategies, technologies, processes, products, marketing plans and procedures, and other proprietary information regarding its client preferences, contract information, designs and drawings, pricing methods, margins and information, sales, sales volumes and strategies, suppliers, and other confidential and proprietary information.

40.     Federal has taken substantial measures and exercised due diligence to prevent its business-related documents and information from becoming available to persons other than those selected by it to have access to these documents and this information in order to further its business.

41.     Wanat was provided access to trade secret information while working as a Regional Sales Manager, including, but not limited to, information regarding proprietary business methods, strategies, technologies, products, marketing plans and procedures, and other proprietary information regarding its client preferences, contract information, pricing methods, margins and information, bids, sales, products, sales volumes and strategies, purchasing histories, and other confidential and proprietary information, and other trade secret information.

42.     Wanat has used, or inevitably will use, this trade secret information in performing his duties for Serac and competing with Federal.

43.     Federal has at all times had a protectable business in its trade secret information, and has taken reasonable steps to protect the secrecy of this information.

44.     Wanat has misappropriated Federal's trade secrets knowingly, willfully, maliciously, intentionally, and in bad faith.

45.     The misappropriation of trade secrets has and will proximately cause substantial damage to Federal including, but not limited to, loss of goodwill, unjust enrichment, or a reasonable royalty, and if transferred to Serac or any other competitor, potential lost profits, potential lost revenue, and future loss of the same amount to be determined at trial.

46.     Unless Wanat is preliminarily and permanently enjoined from misusing, converting, disclosing, and misappropriating Federal's proprietary and trade secret information, Federal will suffer immediate and irreparable injury, loss, or damage for which there is no adequate remedy at law.

47.     Federal is entitled to preliminary and permanent injunctions against the use, possession, transfer, duplication, and disclosure by Wanat of such proprietary and trade secret information, and against any future development or activities that would or could make use of such proprietary and trade secret information.

## COUNT IV

### (Misappropriation of Trade Secrets – Damages)

48.     Federal incorporates paragraphs 1 through 47 above by reference as if fully rewritten herein.

49.     Wanat has violated Wis. Stat. §134.90 *et seq.* because he has used or inevitably will use confidential, proprietary and trade secret information belonging to Federal.

50.     As a direct and proximate result of Wanat's unlawful conduct, he is liable to Federal in an amount in excess of $75,000, the precise amount to be determined at trial.

51.     Wanat misappropriated Federal's trade secrets knowingly, wilfully, maliciously, intentionally, and in bad faith as to warrant the imposition of punitive damages and attorneys' fees in an amount to be determined at trial.

## COUNT V

### (Misappropriation of Trade Secrets – Injunctive Relief under 18 U.S.C. § 1836, *et seq.*)

52.     Federal incorporates paragraphs 1 through 51 above by reference as if fully rewritten herein.

53.     Pursuant to the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*, this Court may act in equity to enjoin threatened misappropriations of Trade Secrets.

54.     In connection with the development of its business, Federal has expended substantial time, labor, and money to research proprietary business methods, strategies, technologies, processes, products, marketing plans and procedures, and other proprietary information regarding its client preferences, contract information, designs and drawings, pricing methods, margins and information, sales, sales volumes and strategies, suppliers, and other confidential and proprietary information.

55.     Federal has taken substantial measures and exercised due diligence to prevent its business-related documents and information from becoming available to persons other than those selected by it to have access to these documents and this information in order to further its business.

56.     Wanat was provided access to trade secret information while working as a Regional Sales Manager for Federal, including, but not limited to, information regarding proprietary business methods, strategies, technologies, products, marketing plans and procedures, and other proprietary information regarding its client preferences, contract information, pricing methods, margins and information, bids, sales, sales volumes and strategies, purchasing histories, and other confidential and proprietary information, and other trade secret information.

57.     Wanat has used, or inevitably will use, this trade secret information in performing his duties for Serac and competing with Federal.

58.     Federal has at all times had a protectable business in its trade secret information, and has taken reasonable steps to protect the secrecy of this information.

59.     Wanat has misappropriated Federal's trade secrets knowingly, willfully, maliciously, intentionally, and in bad faith.

60.     The misappropriation of trade secrets has and will proximately cause substantial damage to Federal including, but not limited to, loss of goodwill, unjust enrichment, or a reasonable royalty, and if transferred to Serac or any other competitor, potential lost profits, potential lost revenue and future loss of the same amount to be determined at trial.

61.     Unless Wanat is preliminarily and permanently enjoined from misusing, converting, disclosing,  and misappropriating Federal's proprietary and trade secret information, Federal will suffer immediate and irreparable injury, loss or damage for which there is no adequate remedy at law.

62.     Federal is entitled to preliminary and permanent injunction against the use, possession, transfer, duplication and disclosure by Wanat of such proprietary and trade secret information, and against any future development or activities that would or could make use of such proprietary and trade secret information.

## COUNT VI

**(Misappropriation of Trade Secrets – Damages
under 18 U.S.C. §1836, *et seq.*)**

63.     Federal incorporates paragraphs 1 through 62 above by reference as if fully rewritten herein.

64. Wanat has violated 18 U.S.C. §1836 *et seq.* by misappropriating confidential, proprietary and trade secret information belonging to Federal.

65. As a direct and proximate result of Wanat's unlawful conduct, he is liable to Federal in an amount in excess of $75,000, the precise amount to be determined at trial.

66. Wanat misappropriated or threatens to misappropriate Federal's trade secrets knowingly, wilfully, maliciously, intentionally, and in bad faith as to warrant the imposition of punitive damages and attorneys' fees in an amount to be determined at trial.

67. Wanat has misappropriated or threatens to misappropriate Federal's trade secrets knowingly, willfully, maliciously, intentionally, and in bad faith as to warrant the imposition of punitive damages and attorneys' fees in an amount to be determined at trial.

**WHEREFORE**, Federal respectfully requests that this Court:

A. With Respect to Counts I, III, and V:

    i. Enter a Preliminary Injunction enjoining and restraining Wanat, as well as all persons acting in concert with him, from directly or indirectly using, disclosing, copying, or transmitting Federal's confidential or trade secret information for any purpose (including, without limitation, engaging in competition with Federal or soliciting Federal's customers, vendors, consultants, or employees);

    ii. Enter a Preliminary Injunction requiring Wanat to abide by the terms of the signed Agreement described above and immediately enjoining and restraining Wanat, and all persons acting in concert with him, from directly or indirectly engaging in competition with Federal, including, but not limited to, enjoining Wanat from continuing to provide any services to Serac and from doing

business with or soliciting any current or former Federal customers, vendors, or employees;

      iii.      Require Wanat, as well as all persons acting in concert with him, to return to Federal within twenty-four (24) hours of the Court's Order all originals, copies, or other reproductions in any form whatsoever, of any record or document containing, in whole or in part, any confidential information belonging to Federal; and

      iv.      Require that Wanat preserve, not tamper with or modify in any way, the hard drive(s) of his  personal computer(s) or any other computer(s) he has used in the last year, and produce the hard drive(s) of his personal computer(s) or any other computer(s) he has used in the last year, and produce all USB devices and thumb drives used since January 1, 20121 to Federal  within twenty-four (24) hours of the Court's  Order;

B.      With respect to Count II, award Federal actual damages incurred as a result of Wanat's breaches of the Agreement;

C.      With respect to Counts IV and VI, award Federal actual damages incurred as a result of Wanat's misappropriation of Federal's trade secrets, as well as punitive damages;

D.      With respect to all Counts, award Federal all costs and expenses associated with this action, including its reasonable attorneys' fees, as well as pre- and post-judgment interest; and

F.      Grant Federal such other and further relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiff hereby requests a trial by jury with the maximum number of jurors permitted by law on all claims so triable.

Respectfully submitted,

/s/ *Deborah S. Brenneman*
Deborah S. Brenneman
THOMPSON HINE LLP
10050 Innovation Drive, Suite 400
Dayton, Ohio 45342
Telephone: (513) 352-6638
Facsimile: (937) 443-6635
Debbie.Brenneman@ThompsonHine.com

Anthony P. McNamara
THOMPSON HINE LLP
312 Walnut Street, Suite 2000
Cincinnati, Ohio 45202
Telephone: (513) 352-6657
Facsimile: (513) 241-4771
Anthony.McNamara@ThompsonHine.com

*Attorneys for Plaintiff*
*Federal Manufacturing LLC*

**VERIFICATION**

I have reviewed the Complaint. Regarding the allegations of which I have personal knowledge, I know or believe them to be true. Regarding the allegations of which I do not have personal knowledge, I believe them to be true based on company information, documents, or both.

Will Casey
Vice President & General Manager
Federal Manufacturing, LLC

JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

Place an "X" in the appropriate box (required): ☐ Green Bay Division ☒ Milwaukee Division

## I. (a) PLAINTIFFS
Federal Manufacturing, LLC

## DEFENDANTS
Matthew Wanat

**(b)** County of Residence of First Listed Plaintiff  Waukesha County, WI
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  Milwaukee County, WI
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

See attachment.

Attorneys *(If Known)*

Unknown

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
Plaintiff

☒ 3  Federal Question
*(U.S. Government Not a Party)*

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                    *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** — **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane — ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☒ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** — ☐ 890 Other Statutory Actions |
| | | | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) — ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) — ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) — ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 865 RSI (405(g)) — ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | | |
| | | ☐ 550 Civil Rights | **IMMIGRATION** | |
| | | ☐ 555 Prison Condition | ☐ 462 Naturalization Application | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | ☐ 465 Other Immigration Actions | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
18 U.S.C. § 1836
Brief description of cause:
Misappropriation of trade secrets and breach of restrictive covenants agreement

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $
Other - Injunctive Relief
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE
06/16/2021

SIGNATURE OF ATTORNEY OF RECORD
/s/ Deborah S. Brenneman

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

**Attorneys for Plaintiff Federal Manufacturing, LLC**

Deborah S. Brenneman
THOMPSON HINE LLP
10050 Innovation Drive, Suite 400
Dayton, Ohio  45342
Telephone:  (513) 352-6638
Debbie.Brenneman@ThompsonHine.com

Anthony P. McNamara
THOMPSON HINE LLP
312 Walnut Street, Suite 2000
Cincinnati, Ohio 45242
Telephone: (513) 352-6657
Anthony.McNamara@ThompsonHine.com

# UNITED STATES DISTRICT COURT

for the
Eastern District of Wisconsin

|                                |     |                    |
|--------------------------------|-----|--------------------|
| FEDERAL MANUFACTURING, LLC     | )   |                    |
|                                | )   |                    |
| *Plaintiff(s)*                 | )   |                    |
| v.                             | )   | Civil Action No.   |
|                                | )   |                    |
| MATTHEW R. WANAT               | )   |                    |
|                                | )   |                    |
| *Defendant(s)*                 | )   |                    |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Matthew R. Wanat
2473 N. 73rd Street
Wauwatosa, WI 53213

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you receive it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12(a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or the plaintiff's attorney, whose name and address are:

Deborah S. Brenneman
Thompson Hine LLP
10050 Innovation Drive, Suite 400
Dayton, Ohio 45342

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*GINA M. COLLETTI, CLERK OF COURT*

Date: _____        _____
                                        *Signature of Clerk or Deputy Clerk*

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4(l))*

This summons and the attached complaint for *(name of individual and title, if any):*

_____

were received by me on *(date)* _____.

☐ I personally served the summons and the attached complaint on the individual at *(place):*

_____

_____ on *(date)* _____ ; or

☐ I left the summons and the attached complaint at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons and the attached complaint on *(name of individual)* _____

who is designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):* _____

_____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:



Pro Mach™
<br>*Integrated Packaging Solutions*

## CONFIDENTIALITY & SECRECY AGREEMENT, AGREEMENT NOT TO SOLICIT, AND AGREEMENT NOT TO COMPETE

THIS AGREEMENT, made and entered into this $\underline{26}$ day of November, 2014 by and between Federal Manufacturing, a Wisconsin Limited Liability Company, a division of Pro Mach, Inc a Delaware Corporation (the "Company") and Matthew R. Wanat ("Employee") an individual residing at 2473 N. 73rd Street, Wauwatosa, WI 53213.

WHEREAS, the Company is engaged in the business of manufacturing and selling liquid filling and capping machinery and products used in conjunction with such machinery, providing related warranty and repair services and performing aftermarket upgrades and retrofits for such machinery (the "Business"); and

WHEREAS, the Company desires to employ Employee in the Business of the Company subject to the terms, provisions and conditions hereinafter set forth; and

WHEREAS, Employee is willing to be employed with the Company in the capacity of Machinery Sales Engineer and to perform the duties incident to such employment and, in addition, to abide by the terms, provisions and conditions hereinafter set forth;

NOW, THEREFORE, in consideration of the terms, provisions and conditions of this Agreement, and of the employment of Employee by the Company and the compensation to be paid to Employee in conjunction with Employee's employment, the parties hereto mutually consent to, covenant, represent, warrant and agree as follows:

**Confidential Information.** Employee acknowledges that in the course of his/her employment with the Company, he/she has and will have access to confidential information relating to the business affairs of the Company or any of its Subsidiaries and any other "Affiliate" (defined as any entity which is controlled, directly or indirectly by Pro Mach, Inc., where control means the possession, directly or indirectly, of the power to direct the management and policies of such entity). Such confidential information includes, but is not necessarily limited to customer, contractor, distributor, manufacturer's representative, and vendor identities, contact persons and their addresses and telephone numbers, correspondence, communications and other information; rolodexes and business card files; procedures, manufacturing processes, engineering methods, designs, drawings and specifications, methods, records and standards relating to the manufacture, distribution, sales and marketing of the Company's or any of its Subsidiaries' or Affiliates' products; the terms of any contracts entered into by the Company or any of its Subsidiaries or Affiliates; any information on any computer database; sales, marketing and prospect plans and identities; advertising and promotional brochures and cover designs; fiduciary information; records, data, formulas, specifications, trade secrets, developments, research activity, process,

Case 2:21-cv-00907-SCD Filed 06/04/21 Page 23 of 31 Document 1-1

Exhibit

A

designs, sketches and drawings; short term and long range plans, financial status, statements and information; and personal data, including specifically all compensation and other personal information relating to any employee of the Company or any of its Subsidiaries or Affiliates. Confidential information also includes any confidential information relating to any business of any company affiliated with the Company, which is disclosed to Employee either purposely or inadvertently in the course of Employee's employment with the Company. Employee agrees that such information shall be considered secret and disclosed to Employee in confidence. Employee recognizes that such information is the sole property of the Company and shall be used for exclusive benefit of the Company. During Employee's employment by the Company and thereafter, Employee will not directly or indirectly disclose or use any such confidential information except as required in the conduct of the Company's business. Nothing in this Section is intended to limit the Company's right to enforce or protect its statutory trade secrets, patents, copyrights or trademarks for an unlimited period.

Confidential information may be written, stored in a computer, merged with other information, or simply memorized. Just because it is memorized, however, does not in any way reduce its confidentiality or its proprietary nature. While some of this confidential information may be generally public knowledge, its compilation in form useful to the Company and its competitor's makes it unique and valuable. Employee agrees that all records, files, documents, equipment, rolodexes, business card files, computer discs, video tapes and the like relating to the Company's business which he/she may prepare, use or obtain shall be and remain sole property of the Company and shall not be removed from the Company's premises or control without written authorization from the General Manager and/or Chairman/CEO of the Company. Employee further agrees that prior to his/her separation from the employ of the Company for any reason, he/she will meet with such person as the Company may designate for a separation interview and will deliver to the Company any and all materials in his/her possession relating to and within the scope of the current or projected business of the Company, including, but not limited to, all the items listed above.

**Inventions and Patents.** Employee acknowledges that all inventions, innovations, improvements, developments, methods, designs, analyses, drawings, reports and all similar or related information (whether or not patentable) which relate to the Company or any of its Subsidiaries or Affiliates actual or anticipated business, research and development or existing or future products or services and which are conceived, developed or made by Employee while employed by the Company and its Subsidiaries or Affiliates (whether prior to or after the date of Employee's employment) ("Work Product") belong to the Company or such Subsidiaries or Affiliates. Employee will keep complete records of any such Work Product. Employee will promptly disclose such Work Product to Management and perform all actions reasonably requested by the Management of the Company (whether during or after Employee's employment) to establish and confirm such ownership (including, without limitation, assignments, consents, powers of attorney and other instruments).

All work products, inventions, and disclosures, if any, Employee claims to be of his/her own creation before his/her employment with the Company are listed by exhibit to this Agreement (no exhibit shall appear if no inventions or disclosures are appropriate).

**Non-Compete, Non-Solicitation.** In further consideration of the compensation to be paid to Employee hereunder, Employee acknowledges that in the course of Employee's employment with the Company, Employee shall have regular interaction with the Company's customers in a manner that impacts their choice to continue to do business with the Company. Employee further acknowledges that in Employee's capacity as Machinery Sales Engineer, Employee may become intimately familiar with the design, manufacture, and functioning of the Company's products and services. As such, Employee's services are of special, unique and extraordinary value to the Company and impact the good-will of the Company.

In light of the foregoing, Employee agrees that, during the Non-Compete Period, as defined below, Employee shall not directly or indirectly own any interest in, manage, control, participate in, consult with, render services for or be employed in any capacity with any organization or business venture that competes or may compete with the Company during the last two (2) years of his/her employment with the Company for any Competing Business as defined herein, including but not limited to having direct customer contact, writing of technical manuals, updating customer databases and machine location databases, or developing training information for use of equipment. Nothing herein shall prohibit Employee from being a passive owner of not more than 5% of the outstanding stock of any class of a corporation, which is publicly traded, so long as Employee has no active participation in the business of such corporation. For purposes of this Agreement: (i) a Competing Business shall mean any business venture located within 50 miles of where the Company is actually serving customers that competes or intends to compete with the Company in connection with the Business or any other product developed and/or manufactured by the Company during the last two (2) years of Employee's employment with the Company (or Employee's period of employment with the Company, if less than two (2) years); and (ii) the Non-Compete Period shall mean the period of Employee's employment with the Company, and one (1) year following termination of employment.

In addition, during the Non-Compete Period Employee shall not directly or indirectly through another entity (i) induce or attempt to induce any employee of the Company or any of its Affiliates to leave the employ of the Company or such Affiliate, or in any way interfere with the relationship between the Company or any Affiliate and any employee thereof; or (ii) hire any person who was an employee of the Company or any Affiliate at any time during his/her employment with the Company or any Affiliate; or (iii) induce or attempt to induce any customer, supplier, licensee, licensor, franchisee or other business relation of the Company or any Affiliate to do business with Employee (or any person or entity for whom Employee is rendering services or acting on its behalf) or to cease doing business with the Company or such Affiliate, or in any way interfere with the relationship between any such customer, supplier, licensee or business relation and the Company or any Affiliate (including, without limitation, making any negative statements or communications about the Company or its Affiliates).

**Disclosure of Prior Agreements.** Employee represents that he/she has disclosed to the Company any employment agreements or any other agreement, still in effect, which imposes any restrictions on Employee or the Company regarding the employee and/or the performance of his/her job duties for the Company. Employee represents that, except for those restrictions, if any, specifically disclosed by exhibit to this Agreement, he/she is not subject to any restrictions arising from his/her previous employment.

**Non-Use of Third-Party Trade Secrets.** Employee further represents that he/she has not disclosed and will not disclose to the Company and has not used and will not use on the Company's behalf any trade secrets or other confidential and proprietary information belonging to a third party, without consent from that third party.

**Assignment.** This Agreement is personal to Employee and is not assignable. All of the terms and provisions of this Agreement shall inure to the benefit of and be enforceable by the Company and its respective successors, assigns and legal representatives.

**Governing Law.** This Agreement shall be governed by the laws of the State of Wisconsin, and both parties consent to venue and personal jurisdiction over them in the courts of that state, including the federal courts, for purposes of construction and enforcement of this Agreement.

It is Employee's intention that the provisions of the Agreement shall be enforceable to the fullest extent permissible under the law and public policy of the State of Wisconsin. Accordingly, if any provision hereof is determined to be invalid or unenforceable, either in whole or in part, this Agreement shall be deemed amended to delete or modify, as necessary, the offending provision and to alter the remainder of this Agreement in order to render it valid and enforceable.

**Remedy.** Employee agrees that any breach of this Agreement by Employee would cause irreparable damage to the Company, and that in the event of any such breach, the Company shall have, in addition to any and all remedies at law, the right to an injunction, specific performance or other equitable relief to prevent the violation of Employee's obligations hereunder. If the Company shall employ counsel in connection with successfully enforcing any of its rights under this Agreement, all of the reasonable attorney's fees, and any exposure, costs or charges relating thereto shall be payable by Employee upon the Company's demand.

**EMPLOYEE ACKNOWLEDGES THAT HE/SHE HAS READ AND UNDERSTANDS THE COMPLETE AGREEMENT.**

[Remainder of page intentionally left blank]

In WITNESS WHEROF, this Agreement has been executed on the $\underline{26}$ day of November, 2014.

PRO MACH, INC.:

MATTHEW R. WANAT:

_____

_____

By:

By:

Date:

Date:



Performance, Packaged

May 6, 2021

Matthew Wanat
2473 N. 73rd Street
Wauwatosa, WI 53213

Dear Matthew,

This letter is to confirm your separation from Federal Manufacturing LLC effective May 6, 2021. You submitted your letter of resignation on Friday, April 30th, 2021. The Company is accepting your resignation.

A final check will be generated and paid to you on May 14, 2021.  It will include pay for time worked. Your benefits will end on midnight on May 6, 2021.  Please refer to the attached Separation Flyer for contact information for various benefit providers

I want to remind you that upon employment with Federal Manufacturing  (the "Company") you signed a Confidentiality and Non-Compete Agreement, whereby you agreed to, among other things, not to disclose any confidential information, including, but not limited to customer, contractor, distributor, manufacturer's representatives and vendor identities, contact persons and their addresses and telephone numbers, correspondence, communications and other information; rolodexes and business card files; procedures, manufacturing processes, engineering methods, designs, drawings and specifications, methods, records and standards relating to the manufacture, distribution, sales and marketing of the Company's or any of its Affiliates' products; the terms of any contracts entered into by the Company or any of its Affiliates; any information on any computer database; sales, marketing and prospect plans and identities; advertising and promotional brochures and cover designs; fiduciary information; records, data, formulas, specifications, trade secrets, developments, research activity, process, designs, sketches and drawings; short term and long range plans, financial status, statements and information.

I strongly suggest that you carefully read the Agreement and fully understand the obligations to which you are bound.  Furthermore, I also suggest that you review the Agreement with your new employer or any other individual that you may be engaged with where a violation of the Agreement may occur, so that there is no confusion as to what you are permitted and not permitted to do pursuant to the Agreement.




Requests for reference checks on former employees shall be directed to Human Resources.  As a matter of policy, only dates of employment, title and full or part-time status shall be provided.

Sincerely,

Art Fuentes
Human Resources Manager

cc: employee file


# THOMPSON HINE

| ATLANTA | CINCINNATI | COLUMBUS | NEW YORK |
|---|---|---|---|
| | CHICAGO | CLEVELAND | DAYTON | WASHINGTON, D.C. |

May 28, 2021

***Via FedEx***

Mr. Matthew Wanat
2473 N. 73rd Street
Wauwatosa, WI  53213

RE:     Federal Manufacturing, LLC / Post-Employment Obligations

Dear Mr. Wanat:

I represent Federal Manufacturing, LLC ("Federal").  I understand that you have resigned your employment with Federal effective May 6, 2021.  My client only recently learned that you have accepted a position with Serac, Inc. ("Serac"), a direct competitor of Federal.

As you know, you entered into an agreement with Federal on November 26, 2014 in connection with your employment which contains certain confidentiality, non-solicitation and non-competition obligations (the "Agreement").  A copy of the Agreement is enclosed with this letter.  Under the terms of your Agreement, you are prohibited from using or disclosing Federal's confidential information at any time.  Additionally, for a period of <u>one year</u> following the termination of your employment, you are prohibited from soliciting Federal's employees or customers.  Specifically, with regard to customers, the Agreement prohibits you from:

> Inducing or attempting to induce any customer, supplier, licensee, licensor, franchisee or other business relation of the Company or any Affiliate to do business with Employee (or any person or entity for whom Employee is rendering services or acting on its behalf) or to cease doing business with the Company or such Affiliate, or in any way interfere with the relationship between any such customer, supplier, licensee or business relation and the Company or any Affiliate (including, without limitation, making any negative statements or communications about the Company or its Affiliates).

Further, under the terms of the Agreement you may not for a period of <u>one year</u>:

> Directly or indirectly own any interest in, manage, control, participate in, consult with, render services for or be employed in any capacity with any organization or business venture that competes or may compete with the Company during the last two (2) years of his/her employment with the Company for any Competing Business as defined herein, including but not limited to having direct customer contact, writing of technical manuals, updating customer databases and machine location databases, or developing training information for use of equipment.

Debbie.Brenneman@ThompsonHine.com  Fax: 937.443.6635  Phone: 513.352.6638          4827-2423-0892

THOMPSON HINE LLP          Austin Landing I          www.ThompsonHine.com
ATTORNEYS AT LAW           10050 Innovation Drive     Phone:  937.443.6600
                           Suite 400                  Fax:  937.443.6635





It is our understanding that you are in breach of the Agreement by your acceptance of and performance of your current role of Southeast Regional Sales Manager for Serac, Inc. You worked as a Regional Sales Manager for Federal, servicing the same Southeast U.S. sales territory that we believe you to be currently servicing for my client's direct competitor. Based on your new role, we can only assume that you are utilizing your intimate knowledge of Federal's customers, potential customers, products, pricing and marketing strategies, in your new employment in the same sales territory, to compete with Federal for your and Serac's benefit.

You were also invested with a wide variety of Federal's confidential, proprietary and/or trade secret information during the course of your employment. We are currently investigating your use of such information in the weeks preceding your resignation. However, it is inconceivable that you could perform the same role at a direct competitor without inevitably using and disclosing that trade secret information.

Please have your counsel contact me immediately. If we do not hear from you or your counsel by close of business on Tuesday, June 1, Federal will proceed to enforce its full legal remedies available against you. You should also take note of the attorney fee provision in the Remedy section of the Agreement.

Very truly yours,

Deborah S. Brenneman

Enclosure

cc:    Mr. Patrick Mohan
       Serac, Inc. c/o Mr. Dino Chece, President & CEO